U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

JUN 3 0 2014

CLERK, U.S. DISTRICT COURT
By _____
                    Deputy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

JAIME REBORN,                        §
                                     §
         Plaintiff,                  §
                                     §
VS.                                  §   NO. 4:14-CV-269-A
                                     §
NEVADA STATE EDUCATION               §
ASSOCIATION, ET AL.,                 §
                                     §
         Defendants.                 §

MEMORANDUM OPINION
and
ORDER

Now before the court for consideration are the following
motions filed in the above-captioned action:  combined motion to
dismiss pursuant to Rule 12(b)(3) and Rule 12(b)(5) of the
Federal Rules of Civil Procedure, or alternative motion to
transfer venue pursuant to 28 U.S.C. § 1406(a), filed by
defendant Nevada State Education Association ("NSEA"); and,
combined motion to dismiss pursuant to Rule 12(b)(1), Rule
12(b)(2), Rule 12(b)(3), and Rule 12(b)(6) of the Federal Rules
of Civil Procedure, filed by defendant National Staff
Organization--Nevada ("NSO-N").  Pro se plaintiff, Jaime Reborn,
filed responses to the motions, which the court will consider
despite their being untimely filed.  Having considered the
motions, plaintiff's responses, the amended complaint, and the
applicable legal authorities, the court concludes that the

motions to dismiss pursuant to Rule 12(b)(3) should be granted, and the remaining motions should be denied.

I.

Background

Plaintiff initiated this action by filing his original complaint on April 17, 2014, following by his amended complaint on April 24, 2014.  The amended complaint alleged the following:

Plaintiff, who is African-American, currently is a citizen of the State of Texas.  However, at all times relevant to this action, from September 2006 to December 2012, plaintiff was employed by the NSEA in Las Vegas, Nevada.  NSO-N was plaintiff's "union representative organization" from approximately February 2009 through December 2012.  Am. Compl. at 2.

In August 2012 plaintiff applied for the position of Director of Communications; that same month, plaintiff was informed he would not be interviewed for the position.  The NSO-N did not intervene on plaintiff's behalf, but "colluded with NSEA management" to keep plaintiff from obtaining the position.  Id. at 3.  The NSO-N contract with NSEA provides that if current NSEA staff members have qualifications equal to those of other applicants, NSEA staff will be given preference for a position. Plaintiff has seven college degrees from accredited colleges and universities, including a Doctor of Management in Information

2

Systems Technologies, which plaintiff was completing at the time
he was denied the Director of Communications position.
Additionally, NSEA management never verified recommendations from
three "Hollywood feature film directors that attested to"
plaintiff's abilities as Director of Communications.  Id.

When plaintiff complained to NSEA's board of directors about
not getting the Director of Communications position, he was
released and barred from the NSEA building less than two months
later.  NSEA management officials told plaintiff they were
advised by the parent organization, the National Education
Association, to terminate plaintiff's employment.  No proof of
this was ever provided to plaintiff.

Plaintiff had more formal education than any other
professional or associate staff member at NSEA, but was the
lowest paid professional on staff.  To the best of plaintiff's
knowledge, NSEA "had been on a pay step increase for a few
years."  Id. at 4.  However, plaintiff should have been, but was
not, moved to the professional staff pay scale with other members
of the professional staff.  NSEA has limited means by which to
increase revenue.  Plaintiff believed that NSEA and NSO-N
colluded in allowing his termination so that his salary could be
used to "help cover the pay step increases" of others.  Id.

Lori Vece ("Vece"), president of NSO-N, told plaintiff that the NSEA management team had reviewed applications for the Director of Communications position, and had noted that his recommendation letters were unsigned. In response, plaintiff told Vece there was no requirement that they be signed, and each had a telephone number by which they could be verified. In plaintiff's view, Vece was "making it clear" that NSEA had no intention of hiring him. Id. Dwight Blake, NSO-N vice-president, also told plaintiff during the application process that plaintiff would not be hired because of plaintiff's "toxic relationship" with his supervisor, Michael Tibbs ("Tibbs"), NSEA's Director of Information Technology. Id.

Claudia Briggs ("Briggs"), outgoing president of NSO-N and the outgoing Director of Communications, scolded plaintiff for filing a written complaint with the board of directors regarding NSO-N's failure to assist plaintiff after he was not interviewed for the position of Director of Communications. Plaintiff's salary was "tens of thousands of dollars less" than what Briggs earned as the Director of Communications; by giving plaintiff the position, NSEA could have saved money and still hired someone to replace him. Id. at 5.

Plaintiff was relieved of his duties by Gary Peck ("Peck"), NSEA Executive Director, and Tibbs. Tibbs was the only African-

4

American employee left that directly worked for NSEA.  Since Peck
and Tibbs were both graduates of Stanford University, plaintiff
believed this played a role in plaintiff's dismissal "in favor
of" Tibbs, "as well [as] the NSEA wanting to remove as many
Negro/African-American/Black people from the NSEA."  <u>Id.</u> at 5.
Plaintiff believed it was "unconscionable" to discharge him when
Tibbs repeatedly made decisions that caused "technology problems
with the entire NSEA computer system."  <u>Id.</u> at 5-6.  The
president of NSEA repeatedly commented that she was upset about
Tibbs's handling of computer issues.  Plaintiff now believes that
Tibbs hired him to be the "fall guy for any problems arising with
the computer network."  <u>Id.</u> at 6.  The amended complaint also
identified other former NSEA employees whom plaintiff believed
faced racial discrimination from NSEA.

The individual hired as Director of Communications was Nick
DiArchangel ("DiArchangel").  As DiArchangel was setting up his
office at NSEA headquarters in Las Vegas, DiArchangel stated to
plaintiff and Tibbs that he knew both the current and past
presidents of NSEA, and plaintiff believed that such connections
were how DiArchangel got the job.

The amended complaint alleged claims and causes of action
against defendants for racial discrimination in violation of

Title VII of the Civil Rights Act of 1964 ("Title VII"), and violation of the Equal Pay Act.

II.

## Grounds of the Motions and Plaintiff's Responses

A.   NSEA'S Motion[1]

NSEA first argues that the complaint should be dismissed pursuant to Rule 12(b)(5) due to lack of proper service. Specifically, NSEA maintains that no summons was served with the complaint, and that the individual upon whom the complaint was served was not authorized to accept service on its behalf.

NSEA also argues that plaintiff's claim under Title VII should be dismissed or transferred to the District of Nevada pursuant to Rule 12(b)(3) and 28 U.S.C. § 1406(a), because venue is not proper in the Northern District of Texas under Title VII's specific venue provision. Additionally, NSEA maintains that the Equal Pay Act claim should be dismissed or transferred because the Northern District of Texas is not a proper venue under the general venue provisions of 28 U.S.C. § 1391.

---

[1]Portions of NSEA's motion refer to an appendix. No appendix was filed with the motion to dismiss. However, the court is able to resolve NSEA's motion without reliance on any documents that might have been contained in the appendix.

B.   NSO-N's Motion

NSO-N first argues for dismissal pursuant to Rule 12(b)(1),
claiming that the court lacks subject matter jurisdiction over
plaintiff's Title VII claim because plaintiff failed to exhaust
his administrative remedies as to that claim, and that subject
matter jurisdiction is lacking over plaintiff's claim under the
Equal Pay Act because such claim is wholly insubstantial and
frivolous.  NSO-N further contends that the court lacks personal
jurisdiction over it, warranting dismissal under Rule 12(b)(2).
NSO-N also raises the same venue arguments pursuant to Rule
12(b)(3) as raised by NSEA, and additionally argues that
plaintiff's claims should be dismissed pursuant to Rule 12(b)(6)
for failure to state a claim for relief.

C.   Plaintiff's Responses to the Motions

As to each motion, plaintiff essentially reiterates the
allegations found in the amended complaint.  As to the NSEA,
plaintiff argues that it is an affiliate of the National
Education Association ("NEA"), which also represents the Texas
State Teacher's Association.  Hence, because the NEA is a
national organization, plaintiff contends this gives the court
jurisdiction over its affiliate, the NSEA.  Similarly, plaintiff
contends that NSO-N is an affiliate of the National Staff
Organization, which operates in Texas as the "Staff Association,

7

Professional, Texas Teachers Association." Pl.'s Resp. to NSO-N's Mot. to Dismiss at 4. Because the court would have jurisdiction over the Texas association, in plaintiff's view, the court also has jurisdiction over the NSO-N.

The court has considered the grounds raised in the motions and plaintiff's response and finds that dismissal for improper venue pursuant to Rule 12(b)(3) and 28 U.S.C. § 1406(a) is warranted.

III.

Analysis

A.   The Court's Subject Matter Jurisdiction

The court will initially address the issue of subject matter jurisdiction raised by NSO-N. NSO-N argues that the court lacks subject matter jurisdiction over plaintiff's Title VII claim because the amended complaint fails to allege that plaintiff exhausted his administrative remedies by filing a charge with the EEOC. NSO-N cites to Rivers v. Geithner, 548 F. App'x 1013 (5th Cir. 2013) (per curiam), for the proposition that such failure is a jurisdictional prerequisite to filing suit under Title VII. In a footnote in that case, however, the court recognized an inter-circuit dispute over whether exhaustion is a jurisdictional issue, or merely a "statutory prerequisite to suit that is subject to equitable remedies," and found it unnecessary to reach

that question.  <u>Rivers</u>, 548 F. App'x at 1017 n.1.  Accordingly,

the court declines to find subject matter jurisdiction lacking on

this basis.

NSO-N further argues that the court should dismiss the Equal

Pay Act claim because it is "patently insubstantial," and this

court lacks subject matter jurisdiction where a claim is "wholly

insubstantial and frivolous."  NSO-N's Br. in Supp. of Its Mot.

to Dismiss Pl.'s Am. Compl. at 4 (citing <u>Bell v. Hood</u>, 327 U.S.

678, 682-83 (1946)).  The court is not persuaded that <u>Bell</u>

requires dismissal of plaintiff's Equal Pay Act claim for want of

subject matter jurisdiction.

B.   <u>Venue is Not Proper in the Northern District of Texas</u>

The court has determined that this action should be

dismissed because venue is not proper in the Northern District of

Texas as to either of plaintiff's claims.

1.   <u>Race Discrimination Under Title VII</u>

Title VII includes a special venue provision that places

venue

> in any judicial district in the State in which the
> unlawful employment practice is alleged to have been
> committed, in the judicial district in which the
> employment records relevant to such practice are
> maintained and administered, or in the judicial
> district in which the aggrieved person would have
> worked but for the alleged unlawful employment
> practice, but if the respondent is not found within any
> such district, such an action may be brought within the

        judicial district in which the respondent has his
        principal office.

42 U.S.C. § 2000e-5(f)(3).  As argued by both defendants, nothing

is alleged in the amended complaint as would cause venue to lie

in the Northern District of Texas under any portion of Title

VII's venue provision.  Rather, the allegations show that venue

is proper only in the District of Nevada.

        Plaintiff in the amended complaint alleges that "[a]t all

times relevant to the suit until his termination in December of

2012 he was employed at the Nevada State Education Association in

Las Vegas, NV."  Am. Compl. at 2 (emphasis added).  The Director

of Communications position for which plaintiff applied, but was

not hired, which forms the basis of much of the amended

complaint, was located in, and would be performed in, Nevada.

NSEA's headquarters are located in Nevada.  The decision not to

hire plaintiff and to hire DiArchangel for the position was made

in Nevada.  The defendants exist to "protect[] educators and

educational policies that benefit educators" in the State of

Nevada.  Id. at 5.  Although not expressly alleged in the

complaint, and although no evidence is offered on the subject by

defendants, the only reasonable conclusion is that all of the

employment records relevant to the hiring and termination

decisions at issue in this action are located in Nevada.

                                10

Conversely, a thorough study of the amended complaint reveals no allegations of anything alleged to have occurred in Texas.  "Texas" does not even appear in the amended complaint after page 2, where it only serves to indicate the state where plaintiff now resides.  Nothing in the amended complaint, nor in plaintiff's responses, even suggests that either defendant has any ties with Texas, and any such suggestion would be nonsensical.

Summed up, the District of Nevada satisfies all the requirements for venue found in 42 U.S.C. § 2000e-5(f)(3), whereas the Northern District of Texas satisfies none.  This district is thus not the proper venue for plaintiff's Title VII claim.

2.  Equal Pay Act Claim

No special venue provision governs claims under the Equal Pay Act.  Accordingly, the general venue statute, 28 U.S.C. § 1391, applies, establishing venue in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, . . .; or

> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to

the court's personal jurisdiction with respect to such
action.

28 U.S.C. § 1391(b).  As discussed previously, based on the
allegations of the amended complaint, none of the events or
omissions giving rise to plaintiff's claims occurred in the
Northern District of Texas, or anywhere else in Texas, nor is
there anything alleged in the amended complaint that could lead
to a conclusion that either defendant is a resident of Texas, so
as to satisfy the first two possible grounds for establishing
venue in the Northern District of Texas.  Rather, all of the
events or omissions involved in this action occurred in Nevada.

As to the third option under § 1391(a), both defendants
agree that they would be subject to the jurisdiction of the
district court of Nevada.  In contrast, nothing is alleged in the
amended complaint that would even suggest either defendant has a
single contact with Texas sufficient to establish this court's
personal jurisdiction over them.  Plaintiff has offered no
authority to support the contentions in his responses that
because the court has jurisdiction over similar organizations in
Texas, the court also has jurisdiction over the defendants.
Plaintiff has offered nothing more on the subject of the court's
jurisdiction over defendants, although it is his burden to do so.
Hence, venue for plaintiff's Equal Pay Act claim is proper in the

12

District of Nevada, but cannot lie in the Northern District of Texas under any of the provisions of § 1391(b).

C.   Dismissal of This Action is Appropriate

If the court finds that venue of an action is indeed improper, section 1406(a) provides that the court "shall" dismiss it, or, "if it be in the interest of justice," transfer the action to a "district or division in which it could have been brought."   28 U.S.C. § 1406(a).

Here, the court concludes that dismissal, rather than transfer, is the appropriate disposition of this action.   As raised in NSEA's motion, and as confirmed by the papers on file with the court, the Clerk issued no summons in this action, and defendants were served only with the amended complaint.   Rule 4(c)(1) of the Federal Rules of Civil Procedure requires that the summons be served with a copy of the complaint, and failure to do so renders service ineffective.   See, e.g., Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., 484 U.S. 97, 104 (1987) ("Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied."); Osrecovery, Inc. v. One Group Int'l, Inc., 234 F.R.D. 59, 61 (S.D.N.Y. 2005) (failure to serve a summons with the complaint constituted ineffective service of process).   In the court's view, a transfer of this action would excuse

13

Case 4:14-cv-00269-A   Document 20   Filed 06/30/14   Page 14 of 14   PageID 93

plaintiff's failure to effect proper service of process on the defendants.  Accordingly, the court concludes that the "interests of justice" in this action do not warrant transfer of this action.  <u>See</u>, <u>e.g.</u>, <u>Poe v. Kuyk</u>, 448 F. Supp. 1231, 1237 (D.C. Del. 1978) (transfer not in the interests of justice under § 1406 where, <u>inter alia</u>, service found to be defective).  Instead, the court is dismissing this action without prejudice to plaintiff's refiling it in a court of proper venue, which would be the District of Nevada.

IV.

<u>Order</u>

Therefore,

The court ORDERS that the motions to dismiss pursuant to Rule 12(b)(3) filed by NSEA and NSO-N be, and are hereby, granted, and that all claims and causes of action asserted by plaintiff, Jaime Reborn, against NSEA and NSO-N be, and are hereby, dismissed without prejudice.

The court further ORDERS that all other relief sought by the motions filed by NSEA and NSO-N be, and is hereby, denied.

SIGNED June 30, 2014.

_____
JOHN McBRYDE
United States District Judge

14